UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HERMES HEALTH ALLIANCE, LLC | CIVIL ACTION |
| VERSUS | NO: 20-1654 |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, ET AL. | SECTION: "A" (5) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 69)** filed by Willard O. Lape, III, LLC ("Lape"). Girod Titling Trust ("Girod") opposes the motion. The motion, submitted for consideration on March 30, 2022, is before the Court on the briefs without oral argument.

### I.     Background

This is an interpleader action—or at least it is at present. When the case was removed from state court in June 2020 it was an insurance coverage dispute between Hermes Health Alliance, LLC ("Hermes") and its insurers for property damage sustained to a building owned by Hermes. The property was subject to a mortgage, which Girod claims to now own, securing a promissory note, which Girod also claims to now own.[1] Lape is Hermes's attorney—he represented Hermes in the insurance coverage dispute and he continues to represent Hermes in the interpleader proceedings.

---

[1] The multiple indebtedness mortgage was executed in favor of First NBC Bank in New Orleans (Rec. Doc. 19-1 at 2). Girod has attached documents to its answer so as to effect a transfer of all rights under the mortgage to Girod Titling Trust by way of Girod LoanCo., LLC from the FDIC as receiver for the now defunct First NBC Bank.

The insurance coverage dispute was settled for $350,000.00 and it was through Lape's efforts that the settlement proceeds were obtained. In light of competing claims to the insurance proceeds, the insurers were granted leave to deposit the settlement funds into the registry of the Court and to convert this matter into an interpleader action among the competing claimants. (Rec. Doc. 12, Order). The funds held by the Court are therefore insurance settlement proceeds for the property that Hermes owned subject to the multiple indebtedness mortgage. Lape alleges that he had a 40% contingency fee contract with Hermes and that $140,000.00 of the funds on deposit belong to him. (Rec. Doc. 43, Answer and Cross-Claims ¶ 46).

Thus, as of this date, the only remaining parties claiming an interest in the settlement funds are Girod, Hermes, and Lape.

A settlement conference was held before the insurance claim was settled, (Rec. Doc. 10, Minute Entry 3/25/21), without a resolution. After the insurance claim had settled and the case was converted to an interpleader proceeding, the Court ordered another settlement conference, which was held on January 24, 2022. (Rec. Doc. 66, Minute Entry 1/24/22). No resolution has been reached.

On January 11, 2022, the Court denied Girod's motion to dismiss Lape's claims against the settlement proceeds. (Rec. Doc. 63, Order). The Court explained why that motion to dismiss was without merit insofar as Lape's claim is concerned. The Court did dismiss on Girod's motion, however, certain of Hermes' claims that were outside of the scope of this litigation. (*Id.* at 5).

A jury trial is scheduled for January 23, 2023. (Rec. Doc. 73, Scheduling Order).

Lape now moves for summary judgment seeking a determination that he is

entitled to $140,000.00 (40%) of the funds on deposit, and 2) an order directing the Clerk to disburse that sum to him immediately.

## II.     Discussion

It is undisputed that neither Girod nor its attorneys took any steps to make a claim for the damage to Hermes' building or participated in the lawsuit against the insurers in any manner or took any action to help achieve the settlement. Notwithstanding Girod's efforts to minimize both the difficulty of the insurance claim and Lape's legal work on the case, the entirety of the settlement proceeds were obtained through Lape's efforts. This notwithstanding, Girod told Lape that it is entitled to the full $350,000.00.[2] (Rec. Doc. 69-2, Lape declaration ¶ 14).

Lape argues that La. R.S. § 37:218[3] grants him a privilege on the settlement

---

[2] Other than urging that a 40% fee is too much, the Court has been unable to glean from Girod's opposition exactly what its position is with respect to Lape's fee—whether Lape should get nothing at all for his efforts, whether a 33⅓ contingency fee is reasonable (whereas a 40% fee is not), or whether Lape should be paid on a quantum meruit basis because the contingency fee agreement should not be enforced.

[3] Section 37:218 of the Louisiana Revised Statutes, entitled Contract for fee based on proportion of subject matter; stipulation concerning compromise, discontinuance, or settlement, states:

> A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the

proceeds for his fee, and that this privilege primes over any right to the funds claimed by Girod or any other party. Lape contends that the Fifth Circuit's decision in *Richards v. Louisiana Citizens Property Insurance Corp.*, 623 F.3d 241 (5th Cir. 2010), is indistinguishable from this case and supports his position.

In opposition, Girod argues that Lape's motion is premature because it has not had a sufficient opportunity to obtain discovery from Lape regarding the reasonableness of his fee, and whether he is actually entitled to 40% of the proceeds or anything for that matter. Further, Girod argues that both of these issues are inherently factual in nature and should not be decided via summary judgment. Girod argues that additional discovery is necessary to determine whether Lape's lien even applies to any part of the settlement proceeds.

According to Lape, Louisiana law holds that a third-party like Girod lacks standing to challenge the reasonableness of the contingency fee agreement between Hermes and Lape, which renders the issue of reasonableness irrelevant, along with all of Girod's arguments regarding discovery and prematurity.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed

---

attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.

B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

La. R.S. § 37:218.

in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S. Ct. 2505). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

The Court begins with Girod's contention that Lape's motion for summary judgment is premature because additional discovery is needed to determine whether Lape's lien even applies to any part of the settlement proceeds. This argument is based on Girod's contention that in order for the privilege granted by § 37:218 to apply, an attorney must first prove that his efforts actually increased the client's recovery.

The Court is persuaded that the first privilege, superior to all others, conferred by La. R.S. § 37:218 is not conditioned upon Lape making such a showing. The statute

says nothing of the sort. And in *Richards, supra*, which Girod relies upon for this proposition, the contingency fee agreement was specific insofar as it only applied to recovery *above the initial settlement amount*.[4] 623 F.3d at 243. Under Louisiana law Lape has a lien on the settlement proceeds for the amount of his fees and his lien is superior to any claim by Girod or anyone else. Additional discovery is not necessary to determine whether Lape increased the value of the case and the motion for summary judgment is not premature based on that issue.[5]

Next, Girod argues that the motion for summary judgment must be denied because Lape has not established that a 40% fee is reasonable, and that his motion is premature because additional discovery is needed to determine reasonableness.[6]

---

[4] The client in *Richards* had received a settlement offer from her insurer before she hired an attorney. Thus, when she ultimately retained counsel to pursue a better offer on her behalf, the contingency fee arrangement was structured such that the lawyer could only receive a percentage of the recovery above the initial settlement offer. The Court notes that the contingency fee agreement in that case was for 40 percent. *Richards*, 623 F.3d at 243.

[5] The Court notes that the pleadings filed in this case belie any hint that Hermes retained counsel just to get an increase in a settlement offer. Further, even if that was the case, it would not mean that as a matter of law the contingency fee only attached to the increase above the initial offer. Again, in *Richards, supra*, the negotiated fee arrangement applied specifically to the increase in the settlement offer.

[6] In addition to pressing its prematurity argument, Girod argues that the reasonableness of an attorney's fee is a question of fact, and discussing *Iteld v. Four Corners Construction, LP*, 133 So. 3d 312 (La. App. 4th Cir. 2014), at length argues that summary judgment should not be employed by this Court to determine the reasonableness of Lape's fees. The Court finds no merit in this contention. While it is not clear whether Girod is actually suggesting that the reasonableness of the attorney fee award should be submitted to a jury on January 23, 2023, when this case is set for trial, there is no support whatsoever in the Louisiana jurisprudence for that approach. In *Iteld*, the court of appeal remanded the case for a contradictory evidentiary hearing as to reasonableness and expressly instructed the district judge to employ summary proceedings pursuant to La. Code of Civil Procedure article 2592(1), which does not involve a jury, La. C. Civ. Pro. art. 2592. Thus, even in *Iteld* where summary judgment was reversed and the case remanded so that the issue of reasonableness could be determined, the determination was going to be made by the judge and not by a jury. Of course in federal court, the district judge has greater discretion to grant summary judgment on issues that are not being decided by

At the outset, the Court must reject Lape's contention that the issue of reasonableness is completely irrelevant and that the issue cannot be raised by Girod, a non-party to the contingency fee agreement. Notwithstanding *Brookewood Investments Co. v. Sixty-Three Twenty-Four Chef Menteur*, 958 So. 2d 1200 (La. App. 4th Cir. 2007), which Lape relies upon,[7] the Court's own research persuades it that where an attorney fee award is concerned, the reasonableness of the fee is never outside of the Court's reach, and an interested third-party can raise the issue. *See Central Progressive Bank v. Bradley*, 502 So. 2d 1017 (La. 1987) (recognizing the right of an inferior mortgage holder to challenge the reasonableness of the attorney's fees allocated to the first mortgage holder's attorneys). Of course, a third-party like Girod would certainly have no greater right to challenge the enforceability of the contingency fee agreement than the client himself, who has not challenged it, and who remains bound by it.

That said, the Court is not persuaded that Lape has failed to establish the

---

a jury. *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The district judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). Thus, the Court does not find the state court *Iteld* decision to be instructive.

[7] Lape's reliance on *Brookewood Investments* is understandable because that decision uses language that unequivocally states that the non-party had no cause of action to challenge the reasonableness of the attorney fee contract. 958 So. 2d at 1202. Of course, this general statement ignores the Louisiana Supreme Court's decision in *Central Progressive Bank, supra*, and this Court's *Erie* determination must be based upon the decisions of the state's highest court when it has addressed an issue. *See Richards*, 623 F.3d at 244. Upon a careful reading of *Brookewood Investments*, it becomes clear that the problem the panel was grappling with was that the attorneys themselves had been joined as defendants for the purpose of answering the accusation that their fees had been excessive. Thus, *Brookewood Investments* held that the non-party to the fee agreement had no cause of action against the attorneys that had been paid the allegedly excessive fees. This holding stated in this manner is not inconsistent with *Central Progressive Bank*.

reasonableness of his fee, or that the reasonableness of the fee is even in doubt. First of all, Girod does not argue, nor could it plausibly do so, that 40% is an unreasonable fee percentage for a contingency fee contract in an insurance claim dispute. This Court has presided over a legion of property insurance claim disputes and a 40% contingency fee is typical for a case where a lawsuit has been filed and where a trial has been scheduled. As already noted, 40% was the contingency fee in *Richards, supra*. So the 40% number in and of itself does not raise a question as to reasonableness.

Instead, Girod's position is that when you consider the work that Lape actually did to achieve the settlement, a $140,000.00 fee—which is what a 40% contingency fee produces—is unreasonable. But this approach to reasonableness, is grounded on hindsight and essentially suggests that the client (again, a non-party like Girod certainly has no greater right to challenge the contingency fee contract that what the client would have) could avoid the contractually-agreed to fee by later claiming that the contingency fee arrangement results in an excessive hourly rate. The Court is persuaded that this approach fails to appreciate not only the nature of a contingency fee agreement but also the specific facts of this case.

A contingency fee contract for legal services makes the attorney's compensation for his labor dependent upon the successful enforcement of the client's claim. *Watson v. Kirkpatrick*, 616 So. 2d 803, 808 (La. App. 2nd Cir. 1993). The arrangement promotes access to needed legal services for those without means to afford the risk of financial loss. *O'Rourke v. Carins*, 683 So. 2d 697, 700 (La. 1996) (citing *Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 105 (La. 1979)). Litigation can be expensive and a contingency fee agreement does not eliminate the risk of financial loss inherent in

pursuing litigation, but rather shifts that risk to the attorney, who bears the risk of facing uncompensated time and effort (and often costs) that he expends on behalf of the client's cause. *See Watson*, 616 So. 2d at 808.

Due to the inherently risky nature of civil litigation, at times an attorney may work for years on a case without compensation or reimbursement of costs, having garnered nothing from a contingency fee arrangement. And of course, no one would suggest that the attorney can renegotiate the fee arrangement because hindsight proved it to be a bad deal. But at other times, the attorney is rewarded for the risk because he may settle a claim relatively early in the litigation by expending what Girod has characterized as "minimal work." But when the latter occurs, the client (much less a third-party) likewise cannot ignore the contingency fee agreement that he agreed to and attempt to negotiate a new legal fee arrangement based on the benefit of hindsight.

Moreover, the Court does not concur in Girod's characterization of Lape's efforts to obtain a settlement for his client. The policy at issue in this case was subscribed to by at least ten different insurers, all of whom were made parties to the case in state court. The property damage occurred at some point before November 14, 2019 when Hermes reported the damage, yet when Lape filed suit in March 2020 the insurers had paid nothing on the claim, and the promised confirmation of coverage had not been produced. (Rec. Doc. 1-2, Petition ¶ 13). The case was removed to federal court on an esoteric basis, with an implicit threat to seek to enforce an arbitration clause. (Rec. Doc. 1, Notice of Removal). In the answer filed post-removal, the insurers *inter alia* denied any liability for the claimed loss, denied that Hermes had provided a sufficient proof of loss, and denied coverage. (Rec. Doc. 5, Answer). Thus, Girod's characterization of this

case as one in which a payday for Lape was essentially guaranteed based on minimal work is unfair.

And of course Girod's reasonableness argument fails to account for the fact that even though this case settled in September 2020, Lape has not received a fee because now he must continue to litigate this interpleader case against his client's mortgage creditor. Due to Girod's own efforts, this litigation has continued with Lape fighting for Hermes' claims as well as his own in this interpleader, and a trial date has been set. The Court is persuaded that Girod errs in focusing solely on the legal work that Lape performed to negotiate the settlement.

This case does not involve a situation where a party has applied for an attorney fee award pursuant to a statute, where an extant contingency fee contract may be considered when determining a reasonable fee award. *See, e.g., Bd. of Supvs. of La. State Univ. v. Boudreaux's Tire & Auto Repair, LLC*, 133 So. 3d 1262, 1271 (La. App. 4th Cir. 2014). Instead, the contingency fee agreement is a binding obligation for attorney's fees and so long as it does not run afoul of Rule 1.5 of the Rules of Professional Conduct, which prohibits an *unreasonable* fee. The Court is persuaded that the 40% fee in this case does comport with Rule 1.5 and is not unreasonable. Additional discovery is not needed to determine reasonableness, and Lape's motion for summary judgment is not premature on this basis.

Finally, the Court turns to Girod's contention that Lape's motion is premature because a disputed issue of fact exists as to whether the agreed to contingency fee amount is 40 percent or something less such as 33⅓ percent. The copy of the contingency fee agreement that Lape submitted with his motion for summary judgment

(Rec. Doc. 69-3, Fee Agreement), is signed by the client and it states that compensation for legal services shall be on a contingency fee basis and that the attorney shall receive forty percent (40%). Lape's response to Girod's Interrogatory No. 7, seeking all agreements applicable to the work that Lape performed on the insurance claim, and the date on which the agreement was entered into, references only the contingency fee agreement already produced to Girod (presumably the same one included with the motion for summary judgment). (Rec. Doc. 74-5, Responses at 5). But as Girod points out, the Fee Agreement is undated, and in Lape's response to Interrogatory No. 7, he did not answer the inquiry regarding the date of the agreement. Lape's declaration in support of the motion for summary judgment is likewise silent as to the date that the Fee Agreement was executed.

Because the Fee Agreement is undated, Girod suggests that it might be the product of collusion, (Rec. Doc. 74, Opposition at 4), and could have been confected solely to create a 40% attorney fee claim for Lape. In support of this contention, Girod points to Lape's settlement demand to the insurers dated April 21, 2020, in which he attempted to breakdown the quantum being sought, including a potential award of attorney's fees under La. R.S. § 22:1892. When making the contingency fee calculation in that email, Lape used a factor of 33⅓ percent, and referenced parenthetically "(33⅓% before motion to set for Trial, 40% thereafter)."[8] (Rec. Doc. 74-4, Exhibit 1(B)).

---

[8] This email was authored before the case was removed to federal court, hence the reference to a motion to set the case for trial, which is not used in this district. Rather, as is typical in this district, a scheduling order was entered and the case was set for trial by the Court *sua sponte* once issue was joined. The scheduling conference was held on August 17, 2020, at which time the case was added to the trial calendar. (Rec. Doc. 7, Scheduling Order). This Court first learned of the settlement when the motion for interpleader was filed on May 13, 2021. (Rec.

Although the Court does not agree with Lape's contention that the rules of evidence would preclude the Court from considering the email in conjunction with an attorney fee dispute,[9] the Court is not persuaded that the email has probative value as to the proper contingency fee percentage in this case or creates an issue of fact as to the percentage. Even assuming that the email has probative value, it specifically references a 40% contingency fee after a motion to set for trial. (Rec. Doc .74-4, Exhibit 1(B)). As explained in footnote 8, this case settled after a lawsuit was filed, after it was removed to federal court, and after a scheduling order had been entered. Thus, the Court is at a loss to understand why Girod interprets Lape's email to mean that another contingency fee agreement for less than 40% may exist. The more plausible inference to be drawn from the odd fact that the fee contract is not dated and refers only to a 40% fee is that it was not executed until some point *after* Lape had begun representing Hermes and had already filed the lawsuit against the insurers. But this would not render the fee agreement unenforceable or suggest that Hermes' principal colluded with Lape to drive up the fee to 40%, which again is an extremely common fee arrangement in property damage disputes.

In sum, the Court is persuaded that Lape has submitted a properly supported motion that meets his initial burden of providing the Court with a legal basis for granting

---

Doc. 11). In his declaration Lape states that he negotiated the settlement on September 28, 2020. (Rec. Doc. 69-2, Lape declaration ¶ 11).

[9] Lape's email begins with the statement that "[t]his is a settlement communication and is intended to be covered by Louisiana Code of Evidence Article 408, being inadmissible in any civil proceeding." (Rec. Doc. 74-4, Exhibit 1(B)). Federal Rule of Evidence 408 also renders settlement communications inadmissible for the most part, but there are exceptions.

judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Girod has not identified genuine disputed issues of material fact that preclude summary judgment, or established that the status of discovery has hampered its efforts to do so. The Court finds that Lape is entitled to $140,000.00 of the funds held in the registry as his legal fees in this case.

The Court declines, however, to order the Clerk to disburse the funds while the interpleader remains pending.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 69)** filed by Willard O. Lape, III, LLC is **GRANTED IN PART** as explained above.

April 18, 2022

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE